STATE v. BARRETT.

(Filed March 31, 1903.)

1. EVIDENCE—*Homicide—Self-Defense—Instructions.*

It is error for the trial court to instruct as to self-defense that it is incumbent on the prisoner to show that it was *necessary* to shoot the deceased in order to protect his life, or.to save himself from serious bodily harm, although a proper instruction relative to self-defense had been given in a prior part of the charge.

2. JURY—*Misconduct—Sermon—Trial.*

Where a prisoner and his counsel consent to the attendance of the jury at church, and the minister in his sermon says nothing calculated to influence the jury in the decision of the case, such attendance is not error.

3. HOMICIDE—*Instructions—Murder in the Second Degree—Malice—Burden of Proof.*

In an indictment for homicide, the defendant is required only to "satisfy the jury" of the existence of facts sufficient to reduce the killing to manslaughter or to establish a plea of self defense, not to satisfy them by "stronger proof" or "greater proof."

INDICTMENT against Walter Barrett, heard by Judge *W. S. O'B. Robinson* and a jury, at December Term, 1902, of the Superior Court of MOORE County. From a verdict of guilty of murder in the first degree, and judgment thereon, the prisoner appealed.

*Robert D. Gilmer, Attorney-General,* and *W. B. Jones,* for the State.

*H. F. Seawell,* for the defendant.

WALKER, J. The prisoner was indicted in the court below for the murder of Essex Williams and was convicted of murder in the first degree. Several exceptions were taken by him to the rulings of the court during the trial and to the charge, but we deem it necessary to consider only one of them at

length; and in order to show the grounds of this exception and the reason for our decision, it will be sufficient to state that there was evidence introduced on the part of the State tending to show a case of murder in the first degree, and on the part of the defendant there was evidence tending either to reduce the grade of the homicide to manslaughter or to show that the defendant killed the deceased in self-defense.

At the request of the defendant the court charged the jury as follows:

1.　"If the jury shall find from the evidence that, after the fight in Mary Jane Williams' room, the prisoner and his wife went into their room and while in there they heard or thought they heard the deceased and his wife go out at the window and then the prisoner started through the room to the back room for their effects, preparatory to removing from the premises, and when the prisoners were in the room of the deceased, the deceased suddenly made an assault on the prisoner Walter Barrett with a gun and the prisoner reasonably believed that he was in imminent danger of his life, he had the right to shoot to save himself, and if he shot and killed the deceased under these circumstances he would be guilty of no crime, and the jury should say for their verdict 'not guilty'."

2.　"If the jury shall find from the evidence that the prisoner, Walter Barrett after he had been ejected from the room, saw the wife of the deceased hand a gun to the deceased, and the prisoner reasonably believed that the deceased was going to assault him with the gun, the prisoner had the right to arm himself with a pistol for his own protection."

After giving these instruction, among others requested by the prisoner, but not material to be mentioned, the court in its general charge instructed the jury that "the prisoner having admitted that he shot the deceased, if the State had satisfied them from the evidence beyond a reasonable doubt that the shots fired by the prisoner caused the death of the de-

ceased, the law presumes malice from the mere use of a deadly weapon and denominates the offense murder in the second degree, and casts the burden on the prisoner of satisfying the jury by the stronger proof of such facts and circumstances as will disprove the presumption of malice and reduce the grade of the offense from murder in the second degree to manslaughter, which is the unlawful and felonious killing without malice either express or implied, or to show by the greater proof such facts and circumstances as will justify the killing on the plea of self-defense, that is, that it was necessary for the prisoner to shoot in order to protect his life or save himself from serious bodily harm." To these instructions the prisoner excepted, and we are of the opinion that in one respect his exception is well taken.

It will be observed that in the two instructions given by the court at the prisoner's request, the jury were told that it was quite sufficient to acquit the prisoner if they should find that, at the time of the homicide or when the fatal shot was fired, he reasonably believed or apprehended that the deceased was about to assail him with a gun or that he was in imminent danger of his life, and yet when the court gave that part of its charge relating to self-defense, the jury were instructed that, before the prisoner could claim an acquittal upon the ground that he did kill the deceased in self-defense, it was incumbent upon him to show that it was *necessary* that he should shoot the deceased in order to protect his life or to save himself from serious bodily harm.

In some of the early cases expressions may be found which would seem to indicate that a case of self-defense is not made out unless the defendant can satisfy the jury that he killed the deceased from necessity, but we think the most humane doctrine and the one which commends itself to us as being more in accordance with the enlightened principles of the law is to be found in the more recent decisions of this court. It is

better to hold, as we believe, that the defendant's conduct must be judged by the facts and circumstances as they appeared to him at the time he committed the act, and it should be ascertained by the jury, under the evidence and proper instructions of the court, whether he had a reasonable apprehension that he was about to lose his life or to receive enormous bodily harm. The reasonableness of his apprehension must always be for the jury, and not the defendant, to pass upon, but the jury must form their conclusion from the facts and circumstances as they appeared to the defendant at the time he committed the alleged criminal act. If his adversary does anything which is calculated to excite in his mind, while in the exercise of ordinary firmness, a reasonable apprehension that he is about to assail him and to take his life or to inflict great bodily harm, it would seem that the law should permit him to act in obedience to the natural impulse of self-preservation and to defend himself against what he supposes to be a threatened attack, even though it may turn out afterwards that he was mistaken, provided always as we have said, the jury find that his apprehension was a reasonable one and that he acted with ordinary firmness. We think that the foregoing principle has been clearly stated and adopted by this court in several cases. In *State v. Scott,* 26 N. C., 409; 42 Am. Dec., 148, this court says: "In consultation, it seemed to us at one time that the case might have been left to the jury favorably to the prisoner on the principle of Levet's case, Cro. Car., 538 (1 Hale, 474), which is, if the prisoner had reasonble grounds for believing that the deceased intended to kill him and under that belief slew him, it would be excusable, or at most manslaughter, though in truth the deceased had no such design at the time." And in *State v. Nash,* 88 N. C., 618, the court cites and approves the passage just quoted from *State v. Scott,* and then makes the following extract from *Com. v. Selfridge,* Harrigan & Thompson Cases

on Self-Defence, p. 1: "A, in the peaceful pursuit of his affairs, sees B walking towards him with an outstretched arm and a pistol in his hand, and using violent menaces against his life as he advances. Having approached near enough in the same attitude, A, who has a club in his hand, strikes B over the head before or at the instant the pistol is fired, and of the wound B dies. It turned out in fact that the pistol was loaded with powder only, and that the real design of B was only to terrify A." The judge inquired, "Will any reasonable man say that A is more criminal than he would have been if there had been a ball in the pistol?" 2 Whar. Cr. Law, Sec. 1026(g), and note; Wharton Law of Homicide, 215 *et seq.*

In *State v. Nash,* 88 N. C., 618, the court further says: "But it may be objected that the defendant acted too rashly; before he resorted to the use of his gun, he should have taken the precaution to ascertain the fact whether his child had been actually shot. But that doctrine is inconsistent with the principles we have announced. If the defendant had reason to believe and did believe in the danger, he had the right to act as though the danger actually existed and was imminent. Taking, then, the fact to be that the trespassers had fired into defendant's house and shot his child, and the firing continued, there was no time for delay. The case required prompt action. The next shot might strike himself or some other member of his family. Under these circumstances the law would justify the defendant in firing upon his assailants in defense of himself and his family. But, as we have said, the grounds of belief must be reasonable. The defendant must judge at the time of the ground of his apprehension and he must judge at his peril; for it is the province of the jury on the trial to determine the reasonable ground of his belief. And here, the error is in the court's refusing to receive the proposed

evidence, and submitting that question to the consideration of the jury."

So in *State v. Matthews,* 78 N. C., 534, this court quotes with approval Foster's Crown Law, as follows: "It is stated in all of the authorities, and can not be doubted, that if a man who is assailed believes, and has reason to believe, that, although his assailant may not intend to take his life, yet he does intend and is about to do him *some enormous bodily harm,* such as maim, for example, and under this reasonable belief he kills his assailant, it is homicide *se defendo* and excusable. It will suffice if the assault is felonious. Foster, 274."

The prisoner requested the court to charge the jury in accordance with this reasonable principle, and the court had given the special instructions, but in the general charge it changed the same materially by omitting therefrom the most important portion and requiring the prisoner to satisfy the jury that there was, at the time he fired the pistol, an actual necessity for killing the deceased. The jury therefore were left in doubt and uncertainty as to what was the true rule of law by which they should be guided in passing upon the prisoner's plea of self-defense, and the last instruction, which we may assume made the greater impression upon the jury, called for more proof from the prisoner than the law required of him. He was therefore placed at a disadvantage and consequently embarrassed and prejudiced in his defense.

There is a marked difference between an actual necessity for killing and that reasonable apprehension of losing life or receiving great bodily harm, which is all that the law requires of the prisoner in order to excuse the killing of his adversary, and it was just this difference that may have caused the jury to decide against the prisoner upon this most important issue in the case.

In *Edwards v. Railroad,* at the present term, this court

has said: "It is well settled that when there are conflicting instructions upon a material point a new trial must be granted, as the jury are not supposed to be able to determine when the judge states the law correctly or when incorrectly. We must assume in passing upon the motion for a new trial that the jury were influenced in coming to a verdict by that portion of the charge which was erroneous." *Williams v. Haid,* 118 N. C., 481; *Tillett v. Railroad,* 115 N. C., 662.

We do not think that there was any error in the other rulings of the court to which exceptions were taken.

The defendant's third prayer for instruction was properly refused as there was some evidence for the consideration of the jury upon the question of murder in the first degree, and certainly more than a mere scintilla.

What the woman, Mary Williams, said and did at the house in regard to the chair, when the jury went with the judge and counsel for the State and prisoner, with the full consent of the latter, was not material or harmful. The question was not whether that was the particular chair upon which the deceased's gun fell just as he was shot by the prisoner or whether the chair was large or small, but whether there was a gun on a chair near the window, which would tend to show that the deceased had a gun at the time he was shot.

Nor do we think that there was anything said or intended to be said by the minister in his sermon at the church, which was at all prejudicial to the prisoner. He and his counsel consented that the jury might attend divine services at the church, in charge of an officer. The text of the sermon was announced before the jury entered the church, and we see nothing in the learned discourse, after a most careful perusal of it, which was in the least calculated to influence the minds of the jury in the decision of the case they had in charge. We have no idea that it was the purpose of the minister to

refer to the case either directly or indirectly. As was said by another court in a case where a similar point was presented: "The preacher was speaking of a spiritual matter and his whole application was spiritual. No reasonable man would be influenced in the performance of his duties as a juror in the slightest degree by what was said. Counsel for the accused in open court consented that the jurors might attend church. He knew that they must hear something and his consent carried with it a consent that they should hear anything that was a proper and ordinary enunciation from a Christian pulpit. They heard nothing more." *State v. Kent,* 5 N. D., 564; 35 L. R. A., 518.

We have briefly referred to these last three exceptions, as we thought it proper to do so under the circumstances, although the matters complained of are not likely to be presented at another trial of the case.

There is one part of the charge to which we desire to call special attention. The court told the jury that in order to reduce the degree of homicide from murder in the second degree to manslaughter or to establish the plea of self-defense, where the prisoner in killing the deceased used a deadly weapon, from which the law implied malice, the prisoner must satisfy the jury by "the stronger proof" or by "the greater proof" of the facts and circumstances which reduced the killing from murder to manslaughter or which established the plea of self-defense. While we do not decide in this case, as we are not called upon to do so, that the use of the words "stronger proof" or "greater proof" was reversible error, we desire to direct attention to the fact that the charge in this respect is not in accordance with the suggestions of this court in the case of *State v. Ellick,* 60 N. C., 450; 86 Am. Dec., 442; *State v. Willis,* 63 N. C., 26, and *State v. Garland,* 90 N. C., 668. It is well not to depart from established forms and precedents which are the products of the

wisdom and wide experience of the sages of the law. It is said in the cases just cited that the prisoner must satisfy the jury, neither beyond a reasonable doubt nor yet by a preponderance of testimony, but simply satisfy them, of the existence of facts and circumstances which mitigate the offense or which make good a plea of self-defense. We are not prepared to say whether the jury can become satisfied of the existence of a fact unless the evidence in favor of its existence is stronger or preponderates over that against its existence. But what we do say is that it is best to follow settled forms in the trial of causes.

We forbear to comment on the testimony or to refer to it further than has been necessary to present the exceptions in the case intelligently. We think the prisoner is entitled to another opportunity to establish his defense, if he has one, and for that purpose, and because by reason of the error of the court in its charge to the jury which we have indicated, he has been prejudiced in his effort to do so, a new trial is awarded.

*Per Curiam*: New Trial.