## STATE v. REX MARSHALL.

(Filed 10 April, 1935.)

**1. Homicide E a—Evidence held to show defendant was not in imminent danger of death or great bodily harm and did not apprehend such danger.**

Defendant testified that he shot deceased when deceased reached for a hammer because he thought deceased was going to hit or kill him with the hammer, but that deceased had not grasped the hammer or drawn it back when defendant shot him, and there was other testimony that deceased did not reach for the hammer until after he was shot. *Held:* Defendant's own testimony shows that he was not in imminent danger of death or great bodily harm when he shot deceased, and did not apprehend that he was in such danger.

**2. Same—Right to kill in self-defense or defense of family.**

A homicide is justifiable when committed by a person in defense of himself or family when such person reasonably believes, under the facts and circumstances as they appear to him at the time, that such action is necessary to save himself or his family from death or great bodily harm, the reasonableness of his belief or apprehension under the circumstances as appearing to him being for the jury to determine.

---

STATE *v.* MARSHALL.

---

**3. Same—**

In the exercise of the right of self-defense, more force must not be used than is reasonably necessary under the circumstances, and if excessive force or unnecessary violence be employed, the party charged will be guilty of manslaughter, at least.

**4. Homicide H g—**

Error, if any, in the charge of the court on the question of the right of self-defense, *is held* cured or rendered harmless by the verdict in the light of defendant's admissions and the evidence appearing on the record.

APPEAL by defendant from *Harding, J.,* at December Term, 1934, of BURKE.

Criminal prosecution, tried upon indictment charging the defendant with the murder of one Richard Lloyd.

Verdict: Guilty of manslaughter.

Judgment: Imprisonment in the State's Prison at hard labor for a term of four years.

The defendant appeals, assigning errors.

*Attorney-General Seawell and Assistant Attorney General Aiken for the State.*

*S. J. Ervin and S. J. Ervin, Jr., for defendant.*

STACY, C. J. : When the case was called for trial, the solicitor announced that the State would not insist upon a verdict of murder in the first degree, but would ask for a verdict of murder in the second degree or manslaughter, as the evidence might disclose.

Thereupon, the defendant admitted the killing with a deadly weapon, and assumed the burden of rebutting the presumptions arising from such admission. *S. v. Kealon,* 206 N. C., 682, 175 S. E., 296.

The homicide occurred in the defendant's filling station. The deceased had been drinking, and, with imbecilic courtesy, undertook to engage the defendant's wife in a whispered conversation. This was repulsed and the deceased ordered to leave the building. The defendant testified: "I ordered him out two or three times; he would not leave; and the next thing he said you G— d— s— o— b— and b—; pulled off his hat and slammed it on the counter with his right hand and said you haven't got the guts to shoot me, and that he would die like a man; and when he reached to pick up the hammer in the other hand, I fired. . . . I fired because I thought he was going to kill me with the hammer, or hit me with the hammer and kill me, maybe. (Cross-examination.) He cursed me; I got the pistol and ordered him out, . . . I was scared of the man. No, I was not mad. . . . When I shot him there was

the width of the counter between us. We were between 2½ and 3½ feet apart. . . . I did not shoot to kill. . . . I saw him when he grabbed the hammer. I did not say he picked it up, but he grabbed it; he raised the hammer up when he fell back, but he did not have it in a striking position; he was reaching and he grabbed the hammer. I do not say he raised it up in a striking position before I shot. . . . I say he did not draw the hammer back to strike."

Defendant's wife testified: "When Rex shot I saw him (deceased) grab for the hammer."

It appears, therefore, from the defendant's own testimony that he was not in imminent danger of death or great bodily harm when he shot the deceased; nor did he apprehend that he was in such danger. "I did not shoot to kill" is his statement, and it appears from the record that the deceased did not reach for the hammer until after he was shot. The clear inference is that the defendant used excessive force. *S. v. Keeter,* 206 N. C., 482, 174 S. E., 298.

The right to kill in self-defense or in defense of one's family or habitation rests upon necessity, real or apparent, and the pertinent decisions are to the effect:

1. That one may kill in defense of himself, or his family, when necessary to prevent death or great bodily harm. *S. v. Bryson,* 200 N. C., 50, 156 S. E., 143; *S. v. Bost,* 192 N. C., 1, 133 S. E., 176; *S. v. Johnson,* 166 N. C., 392, 81 S. E., 941; *S. v. Gray,* 162 N. C., 608, 77 S. E., 833.

2. That one may kill in defense of himself, or his family, when not actually necessary to prevent death or great bodily harm, if he believes it to be necessary and has a reasonable ground for the belief. *S. v. Barrett,* 132 N. C., 1005, 43 S. E., 832.

3. That the reasonableness of this belief or apprehension must be judged by the facts and circumstances as they appeared to the party charged at the time of the killing. *S. v. Blackwell,* 162 N. C., 672, 78 S. E., 316.

4. That the jury and not the party charged is to determine the reasonableness of the belief or apprehension upon which he acted. *S. v. Nash,* 88 N. C., 618.

It is also established by the decisions that in the exercise of the right of self-defense, more force must not be used than is reasonably necessary under the circumstances, and if excessive force or unnecessary violence be employed, the party charged will be guilty of manslaughter, at least. *S. v. Glenn,* 198 N. C., 79, 150 S. E., 663; *S. v. Robinson,* 188 N. C., 784, 125 S. E., 617; *S. v. Cox,* 153 N. C., 638, 69 S. E., 419; *S. v. Garrett,* 60 N. C., 148.

5—208

Conceding, without deciding, that some of the illustrations used in the charge, of which the defendant complains, were inappropriate and perhaps misleading, nevertheless it would seem they were harmless or cured by the verdict in the light of defendant's admissions and the evidence appearing on the record.

No error.