STATE OF NORTH CAROLINA v. GEORGE KIRBY.

(Filed 20 March 1968.)

1. Criminal Law §§ 41, 99—

   While the Court may not ask questions reasonably calculated to impeach or discredit a witness or his testimony, the court may propound competent questions to a witness in order to clarify the witness' testi-

mony or to develop some fact overlooked, and the fact that such a question requires a response that is circumstantial evidence does not render it incompetent.

**2. Homicide § 19;    Criminal Law § 33—**

Testimony describing a deceased's wounds is competent to show the violence of the transaction, particularly where the question of the use of excessive force is raised by defendant's plea of self-defense, and such testimony will not be excluded merely because it may excite prejudice against the defendant.

**3. Criminal Law § 99—**

A question propounded by the court as to how wounds found on the deceased compared with each other *is held* a question to develop a relevant fact which had been overlooked and is not an expression of opinion by the court on the evidence.

**4. Homicide § 9—**

One may kill in self-defense if it is necessary or if he reasonably believes it is necessary to protect himself from death or great bodily harm, it being for the jury to determine the reasonableness of the belief upon the facts and circumstances as they appeared to the defendant at the time of the killing.

**5. Homicide § 27—**

The court's charge relating to the actual or apparent necessity for defendant to act in self-defense, and as to whether defendant used only such force as was necessary, or reasonably appeared to him to be necessary, to save himself from death or great bodily harm *is held* to be proper in this case.

APPEAL by defendant from *Cohoon, J.,* August 1967 Mixed Session of SAMPSON.

Defendant was charged in a bill of indictment with murder in the first degree. At the beginning of the trial the solicitor announced that he would not put the defendant on trial as charged in the bill, but would seek a verdict of guilty of murder in the second degree or manslaughter, as the jury might determine. Defendant entered a plea of not guilty.

The evidence presented by the State was, in substance, as follows:

King Boykin testified that he operated "a piccolo place" where he sold food and drinks. On the night of 3 July 1967 he was in his place of business. He became aware of a disturbance while he was behind the counter where he served food through a window. He had heard no conversation between defendant and Harvey McPhail, the deceased. He heard a noise and saw people "jumping up" and running and saw defendant advancing on McPhail with a knife. McPhail backed up and defendant stabbed him twice. Defendant ran between

two tables and McPhail fell face down on the floor after defendant had stabbed him again. Defendant then backed out the door and Boykin did not see him again that night. Boykin stated that he saw nothing in McPhail's hand.

Daniel F. Culbreth testified that he was in King Boykin's place at the time the stabbing occurred. He heard defendant and McPhail arguing about buying a girl a drink. He saw defendant stab McPhail two times as McPhail was backing up and then stab him a third time in the back as McPhail bent forward. He saw a knife in defendant's hand but did not see anything in McPhail's hands. Defendant hesitated over McPhail a little while then ran out. McPhail was carried out to a car and taken to a hospital.

By stipulation, a letter written by Dr. J. Cooper Howard was read into evidence. In the letter the doctor stated, in part, that in his opinion death was due to massive hemorrhage, secondary to the stab wound to the heart. It was also stipulated that Harvey McPhail was dead upon arrival at Sampson County Memorial Hospital that night.

At the close of the State's evidence defendant's motion for non-suit was overruled.

Defendant testified in his own behalf and stated that he went to King Boykin's place on the night of 3 July 1967 with Emma Melvin and two other persons. While there he danced with Emma and then another girl. After dancing, and as he approached Emma to tell her he was ready to leave, Joe McLamb stepped on defendant's foot with his crutch. McLamb apologized to defendant. McPhail, who was standing near Emma, made a statement to the effect that McLamb did not have to apologize to defendant. Defendant stated that he (defendant) smiled, turned, and started walking out when he heard someone shout "watch it." He turned to his left and saw a hawk-bill knife come down over his head. Defendant grabbed McPhail's arm and resisted the latter's efforts to cut him. During this time defendant reached in his pocket for his knife, stabbed McPhail, and ran outside. Defendant stated that he took his knife out of his pocket because he was scared McPhail was "going to kill me and cut me up." He could not recall stabbing McPhail more than once. He asked Larry Simmons to drive him to a doctor because he thought he had been cut. When he discovered that he was not cut defendant told Simmons to let him out near County-wide Sewing Company, where he stayed until 4:00 a.m. He went to the jailhouse around 8:00 a.m. where he told the sheriff what had happened.

The State was allowed to introduce out of order the testimony of Woodrow W. Carr, who testified that he was part-owner and a

co-partner in Robinson and Carr Funeral Home in Clinton. He saw Harvey McPhail on 4 July 1967 and observed his wounds. Carr further stated:

> "He had approximately a two-inch stab wound in the heart, a gapping wound which was at least two inches in the left shoulder blade and another gapping wound in his back. This was about in the middle of the back. That was a stab wound."

At this point defendant presented further evidence.

Emma Melvin stated that she was with defendant the night the stabbing occurred. Her testimony tended to corroborate the testimony of defendant, as did the testimony of other witnesses offered by defendant.

Sheriff J. W. Norton testified that he had investigated the incident and had talked with Emma Melvin and defendant. Norton's testimony as to what they had said to him tended to corroborate their testimony. Norton's statement as to what King Boykin told him that night also tended to corroborate Boykin's testimony.

At the conclusion of the evidence defendant renewed his motion for nonsuit, which was overruled.

The jury found defendant guilty of second degree murder. Defendant moved to set aside the verdict and for a new trial, which motion was denied. Judgment was entered on the verdict.

Defendant appealed.

*Attorney General Bruton and Assistant Attorney General Bernard A. Harrell for the State.*

*Joseph B. Chambliss for defendant.*

BRANCH, J. Defendant assigns as error the court's question to witness Woodrow Carr: "Speaking of the three wounds, how did they compare with each other?"

The presiding judge is entirely justified in propounding competent questions to a witness in order to clarify what a witness has said or to develop some relevant fact which has been overlooked. However, care must be exercised to avoid indirect expression of opinion on the facts, and it is improper for the trial judge to ask questions which are reasonably calculated to impeach or discredit the witness or his testimony. *State v. Kimrey,* 236 N.C. 313, 72 S.E. 2d 677.

Testimony describing wounds found on a deceased is competent as showing the violence of the transaction. *State v. Artis,* 227 N.C. 371, 42 S.E. 2d 409. This rule is particularly applicable here, since defendant by his plea of self-defense raises the question of whether

excessive force was used. Further, since the evidence is relevant, it will not be excluded because it might excite prejudice against defendant. *State v. Green,* 251 N.C. 40, 110 S.E. 2d 609.

Defendant argues in his brief that the answer to the question propounded by the court is circumstantial evidence and thus erroneous.

Conceding, *arguendo,* that the evidence is circumstantial, the mere fact that it is circumstantial does not render it inadmissible.

"Circumstantial evidence, which is evidence of facts from which other matters may be fairly and sensibly deduced, is competent and is highly satisfactory in matters of gravest moment." 2 Strong, N. C. Index 2d, Criminal Law, § 41, p. 546. The single question asked by the trial judge concerned a relevant fact which had apparently been overlooked. He did not cross-examine the witness, nor did the question tend to express an opinion as to the facts of the case.

Defendant's plea of self-defense, coupled with the compelling evidence that defendant inflicted the wound causing deceased's death, further dissipates any possibility of prejudicial error arising from the question. This assignment of error is overruled.

Defendant contends that the trial court erred in its instruction to the jury with respect to defendant's plea of self-defense in general and specifically as related to the crime of manslaughter.

In the case of *State v. Fowler,* 250 N.C. 595, 108 S.E. 2d 892, this Court stated:

> "The pertinent principles of law are clearly set forth in *S. v. Marshall,* 208 N.C. 127, 129, 179 S.E. 427, as follows:
>
> 'The right to kill in self-defense or in defense of one's family or habitation rests upon necessity, real or apparent, and the pertinent decisions are to the effect:
>
> '1. That one may kill in defense of himself, or his family, when necessary to prevent death or great bodily harm. (Citing authority.)
>
> '2. That one may kill in defense of himself, or his family, when not actually necessary to prevent death or great bodily harm, if he believes it to be necessary and has a reasonable ground for the belief. (Citing authority.)
>
> '3. That the reasonableness of this belief or apprehension must be judged by the facts and circumstances as they appeared to the party charged at the time of the killing. (Citing authority.)
>
> '4. That the jury and not the party charged is to determine

the reasonableness of the belief or apprehension upon which he acted. (Citing authority.)' See also *S. v. Goode, supra,* at page 634.

. . . . .

A defendant, when acting in his proper self-defense, may use such force only as is necessary, or as reasonably appears to him at the time of the fatal encounter to be necessary, to save himself from death or great bodily harm. 'The reasonableness of the apprehension of necessity to act, and the amount of force required, must be judged by the jury upon the facts and circumstances as they *appeared* to the defendant at the time of the killing.' *S. v. Moore,* 214 N.C. 658, 661, 200 S.E. 427; *S. v. Bryant,* 231 N.C. 106, 55 S.E. 2d 922."

See also *State v. Francis,* 252 N.C. 57, 112 S.E. 2d 756.

In this connection defendant relies on three assignments of error.

By his Assignment of Error No. 4 defendant attacks the trial judge's instruction in that "the court required the jury to consider upon the question of self-defense as to whether or not the defendant used excessive force in his defense when the question before the jury, as to self-defense, was whether or not he had reasonable cause to believe and did believe that such force was necessary to protect himself from impending danger or great bodily harm."

The judge in this portion of the charge, *inter alia,* instructed the jury:

"Now, in this case, if you should be satisfied from all the evidence in the case, that at the time and place in question, the defendant, Kirby, was without fault and that he was being wrongfully assaulted by Harvey McPhail with a knife and under such circumstances that would create in the defendant, Kirby's, mind, a reasonable ground for him to believe or for him to reasonably apprehend that he, that is the defendant at the time was about to suffer death or great bodily harm unless he cut McPhail; and that he, the defendant did not use more force than reasonable appeared to him under the circumstances, to repel the assault on him by McPhail, if such an assault if you find to have occurred by McPhail; thence the defendant, Kirby, had the right to kill McPhail and the defendant, Kirby, would not be guilty in such case of any crime, neither murder in the second degree nor manslaughter."

Defendant contends by Assignment of Error No. 5 that the court erred "in that the court has charged the jury to decide whether or not the defendant used excessive force while in defense of his life

when the question before the jury was whether or not the defendant had, under all the circumstances, reasonable cause to believe and did believe that the force he used was necessary to protect himself from impending danger or great bodily harm."

Within the portion of the charge here assigned as error the trial court charged:

> ". . . then it would be your duty to convict the defendant of manslaughter, unless he has established to the satisfaction of you the jury of the facts he relies on to make good his plea of self-defense and when you come to consider his plea of self-defense, you should ask yourself these questions: Did the defendant stab Harvey McPhail with a knife, that took the life of the deceased, Harvey McPhail; if such you find and was the defendant at a place where he had the right to be and was he, that is the defendant himself, without fault in bringing on or entering into an encounter or difficulty with the deceased; was he unlawfully or feloniously assaulted by the deceased; did he believe and have reasonable grounds to believe that he was about to suffer death or great bodily harm at the hands of the deceased, Harvey McPhail; did he act with ordinary firmness and prudence, under the circumstances as they reasonably appeared to him and under the belief that it was necessary to kill the deceased in order to overcome an assault being made upon him; if such you find, to save his own life or to protect his person from enormous bodily harm. Did he use no more force that was reasonably necessary or reasonably appeared to him to be necessary to repel the assault which he contends the deceased was making upon him at the time he struck him with a knife."

The court then charged that if the jury should answer these questions in the affirmative, it would be their duty to acquit defendant.

Defendant by Assignment of Error No. 6 contends that the court erred in that "included in this portion of the charge as to the guilt or innocence of the defendant of manslaughter is a requirement placed upon the defendant to show, under his plea of self-defense that he used no more force than he believed to be reasonably necessary to repel the assault when the question before the jury was not the force used but whether or not he had, under all the circumstances, reasonable cause to believe and did believe that such force was necessary to protect himself from impending danger or great bodily harm."

Here the court charged:

". . . that (if) the prisoner has satisfied you from the evidence in the case, that at the time he stabbed and killed the deceased, Harvey McPhail, if you find that he did, that he, the defendant was at a place where he had a right to be and that he was himself without fault and that he was unlawfully or feloniously assaulted or threatened with an assault by the deceased, Harvey McPhail, in such a way and manner, that the defendant believed and had reasonable grounds to believe, that he was about to suffer death or great bodily harm at the hands of the deceased, and that in the exercise of ordinary firmness and prudence, he used no more force than he believed to be reasonably necessary to repel the assault which the deceased was making upon him at the time he struck the deceased with a knife."

The judge then charged: "Then I charge you, that the killing of the deceased, Harvey McPhail, would be excusable homicide and if you so find to your satisfaction, it would be your duty to render a verdict of not guilty in the case."

In each of the assignments of error the court properly and in substantial compliance with recognized principles of law instructed the jury as to actual or apparent necessity for defendant to act in self-defense, and as to whether defendant used only such force as was necessary, or reasonably appeared to him to be necessary, at the time of the killing to save himself from death or great bodily harm.

In the case of State v. Howard, 222 N.C. 291, 22 S.E. 2d 917, the trial judge read to the jury a statute in regard to punishment and cautioned the jury that punishment was not to be considered by them as bearing on defendant's guilt or innocence. Defendant excepted and appealed. In considering this exception, this Court said:

"While the reading of a statute to the jury in regard to punishment is not to be commended, we are not prepared to hold that it alone is sufficiently prejudicial to the defendant to require a new trial. Such a rule, strictly applied, might unduly fetter the judge in giving instructions to the jury, or advising them of the exact language of the statute the defendant is charged with violating. The trial judge has wide discretion as to the manner in which he presents an issue of fact to the jury, so long as he charges the applicable principles of law correctly, and states the evidence plainly and fairly without expressing an opinion as to whether any fact has been fully or sufficiently proven. C.S. 564. It is his high duty to hold the scales evenly between all parties. There are no stereo-typed forms of instruc-

tions. No two cases are exactly alike, and the trial judge's ruling should be considered by the appellate Court in the light of the circumstances of the trial. The rule prevails that in order to overthrow the verdict and judgment it must be made to appear not only that the action of the trial judge complained of was erroneous, but that it was 'material and prejudicial, amounting to a denial of some substantial right.' *Collins v. Lamb*, 215 N.C. 719, 2 S.E. 2d 863."

Here, the trial court charged the applicable principles of law correctly, fairly presented the evidence and contentions of defendant and the State, and properly applied the law to the substantive features of the case.

Defendant has failed to show any prejudicial error.

No error.