STATE OF NORTH CAROLINA v. BEN FITZGERALD RANSOME

No. 57A95

(Filed 8 March 1996)

**Evidence and Witnesses §§ 168, 959 (NCI4th)— uncommunicated threats—state of mind—admissibility to show self-defense—exclusion as prejudicial error**

In a prosecution for two first-degree murders in which defendant presented evidence that he shot and killed the victims in self-defense, the trial court erred by excluding hearsay statements made by the victims to two witnesses, but not communicated to defendant, that the victims wanted to fight defendant and intended to "get" him, since the statements were admissible under the state of mind exception to the hearsay rule set forth in N.C.G.S. § 8C-1, Rule 803(3), and were relevant to support defendant's contention that the victims were the aggressors in the fatal confrontation with defendant. This error was not cured by the admission of defendant's testimony about threats one victim made to him during a confrontation with both victims the afternoon prior to the killings since the fact that the victims had made a series of threats against defendant, both communicated and uncommunicated, had a stronger tendency to show that they were the aggressors in the fatal confrontation than the fact that one victim threatened defendant solely during the heat of another confrontation.

**Am Jur 2d, Evidence §§ 556-558.**

Justice WHICHARD dissenting.

Justices PARKER and LAKE join in this dissenting opinion.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing two sentences of life imprisonment entered by Brown

STATE v. RANSOME

[342 N.C. 847 (1996)]

(Frank R.), J., at the 15 August 1994 Criminal Session of Superior Court, Edgecombe County, upon jury verdicts of guilty of first-degree murder in a case in which defendant was tried capitally. Heard in the Supreme Court 11 October 1995.

> Michael F. Easley, Attorney General, by Francis W. Crawley, Special Deputy Attorney General, for the State.

> Gibbons, Cozart, Jones, Hughes, Sallenger & Taylor, by Thomas R. Sallenger, for defendant-appellant.

ORR, Justice.

Defendant was tried for two counts of first-degree murder on the theory of premeditation and deliberation for the shooting deaths of Marcel and Kelvin Johnson. The State and the defendant presented conflicting evidence about the shooting incident. Defendant's evidence supported the conclusion that Marcel and Kelvin Johnson were the aggressors in the fatal confrontation and that defendant acted in self-defense. Because defendant presented sufficient evidence that he acted in self-defense, the trial court gave a self-defense instruction to the jury.

The State's evidence tended to show that on 29 November 1993, while leaving the home of his friend Quashie Whitley, defendant was approached by Marcel and Kelvin Johnson, who were brothers. Defendant and the Johnson brothers then engaged in a verbal confrontation because the Johnson brothers believed defendant was interested in Kelvin Johnson's girlfriend. During the confrontation, each of the Johnson brothers tried to punch defendant, and defendant pulled out a small knife. Defendant ultimately got into his car and drove away.

Later that evening, Marcel and Kelvin Johnson and a friend, Antonio Jones, drove to Hardee's, where Kelvin Johnson's girlfriend, Asya McNair, worked. Jones stayed in the car while Kelvin and Marcel Johnson went inside. Defendant approached the car and looked in the car window. Defendant said, "my fault" to Jones, then entered the restaurant. Jones followed defendant into the restaurant, where he saw defendant standing inside near the door with a pistol.

Defendant was speaking to McNair and Marcel and Kelvin Johnson, who were sitting in booths. Kelvin Johnson said, "I'm sorry Fitzgerald, I didn't mean to do it." Marcel Johnson said, "Why you got to pull out a gun, my brother don't have one. If ya'll gonna fight ya'll

**STATE v. RANSOME**

[342 N.C. 847 (1996)]

fight straight up. You don't got to use no gun." Jones told defendant to put the gun away, but defendant pointed the gun at Jones and said, "You ain't got nothing to do with it." The restaurant manager came into the dining area and said, "Would you quiet down or leave 'cause you're running my customers out." Defendant turned around with the gun in his hand and said, "You ain't got nothing to do with this, stay out of it, somebody might shoot you." The manager went back behind the counter.

Then Marcel Johnson stood up and began walking toward the door, and defendant shot him. Marcel Johnson was several feet from the side door, slumped over, when defendant fired a second shot into his back. Kelvin Johnson stood and tried to run past defendant toward the counter. Defendant shot Kelvin in the chest and then fired another shot. Defendant then walked to his car and drove away.

Several witnesses testified that neither of the deceased brothers had a weapon and that neither made movements or threats directed toward defendant.

Defendant testified that he went to Hardee's to tell McNair to tell Marcel and Kelvin Johnson that he did not want to have any more problems. He said he took the gun because he felt he needed protection. He testified that at Hardee's, he fired at Marcel Johnson after Marcel jumped up and pulled out a gun. He said that Kelvin Johnson then started rushing as if he was going to tackle defendant, and defendant shot Kelvin. Defendant testified that he did not have any intention of killing anybody.

Several witnesses testified that Marcel Johnson had a reputation as a "fighting person" and as a "violent person." Several witnesses also testified to defendant's character for being law-abiding, truthful, and peaceful.

We have reviewed the assignments of error brought forward by defendant and have found reversible error in the trial court's exclusion of testimony of Tonya Sumlin and Mark Johnson regarding threats against defendant that the deceased brothers communicated to them, but not to defendant. The excluded testimony supported defendant's self-defense theory and should have been admitted.

Defendant gave written notice before the trial began of his intent to offer the testimony in question under Rules 804(b)(5) and 803 of

the North Carolina Rules of Evidence. When defendant offered the testimony at trial, the court ruled that it could not be admitted, but allowed the testimony to be placed in the record.

Out of the presence of the jury, Tonya Sumlin testified that four weeks before the shooting, Marcel Johnson phoned her. She described the substance of the conversation as follows:

> Marcel had asked me did Fitzgerald [defendant] like Asya [Kelvin Johnson's girlfriend] and I told him I didn't know. He said somebody had told him that Fitzgerald was trying to talk to Asya and he said he was going to tell Cal [Kelvin Johnson] and Cal was going to jump on him because they had been wanting to fight him.

Also out of the presence of the jury, Mark Johnson testified that two hours before the shooting, he was with Marcel and Kelvin Johnson in a parking lot where they saw defendant. When asked what Kelvin Johnson said, Mark Johnson replied:

> He said, "There's Fitzgerald. I'm going to get Fitzgerald because he's trying to talk to my girl." I told him, I said, "Leave it alone, it ain't worth it." That's when Marcel said, "No, that's not right, he trying to talk to his girl. That's his girlfriend, we going to get him." I said, "Ya'll leave him alone, it ain't worth it." So we sat there, and kept waiting for the guy to come. That's when he started the car and drove over there by his car and they was staring at him. I kept telling them, just to leave it alone. So we went back over there and he left. Fitzgerald left.

Both defendant and the State acknowledge the common law rule that in homicide cases involving evidence of self-defense, under certain circumstances, uncommunicated threats made by a deceased against a defendant are admissible in evidence. *See State v. Goode*, 249 N.C. 632, 107 S.E.2d 70 (1959); *State v. Minton*, 228 N.C. 15, 44 S.E.2d 346 (1947).

> Generally speaking, uncommunicated threats are not admissible in homicide cases. But there are exceptions to the rule which must be considered in the light of the facts of the particular case. Such exceptions occur where the evidence has an explanatory bearing on the plea of self-defense. The statement of the rule in *S. v. Baldwin*, 155 N.C. 494, 495, 71 S.E. 212[, 213 (1911)], . . . is applicable here: "It is now generally recognized that in trials for homicide uncommunicated threats are admissible . . . where they tend to throw light on the occurrence and aid the jury to a correct inter-

pretation of the same, and there is testimony *ultra* sufficient to carry the case to the jury tending to show that the killing may have been done from a principle of self-preservation," . . . .

*State v. Minton*, 228 N.C. at 17, 44 S.E.2d at 348 (alterations in original) (citations omitted).

Both *State v. Minton* and *State v. Goode* were decided before the enactment of the North Carolina Rules of Evidence, N.C.G.S. § 8C-1, which became effective on 1 July 1984. However, the reasoning underlying this common law rule supports the admission into evidence of the statements in question under the North Carolina Rules of Evidence.

Rule 802 provides that "[h]earsay is not admissible except as provided by statute or by these rules." " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. R. Evid. 801(c). Defendant does not claim that the statements by the Johnson brothers were not hearsay. Because the threats were not communicated to defendant, they were not offered to show their effect on defendant. Instead, they were offered to prove the truth of the matter asserted, that Marcel and Kelvin Johnson wanted to fight defendant and intended to "get" defendant. Therefore, the threats are hearsay.

Rule 803(3) of the North Carolina Rules of Evidence, entitled "Then Existing Mental, Emotional, or Physical Condition," provides what is often referred to as the "state of mind" exception to the hearsay rule. It provides that the hearsay rule does not exclude

> [a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

In interpreting Rule 803(3), we have held that the rule allows the admission of a hearsay statement of a then-existing intent to engage in a future act. *State v. McElrath*, 322 N.C. 1, 17-18, 366 S.E.2d 442, 451 (1988).

The State argues that the hearsay statements would have been inadmissible under the common law rule because they were general

statements rather than specific threats. Although the Johnson brothers did not specifically threaten to kill defendant, their statements can only be considered threats to the physical safety of defendant. Marcel Johnson told Tonya Sumlin that Kelvin was going to "jump on" defendant and that he and Kelvin had been wanting to fight defendant. Kelvin Johnson said to Mark Johnson, "I am going to get [defendant] because he is trying to talk to my girl," and Kelvin Johnson said to Mark Johnson, "we going to get him." In applying Rule 803(3), we have held that evidence tending to show the victim's state of mind is admissible so long as the victim's state of mind is relevant to the case. *E.g., State v. Meekins*, 326 N.C. 689, 695-96, 392 S.E.2d 346, 349-50 (1990). We conclude that the hearsay statements constitute statements of the Johnson brothers' then-existing states of mind as expressions of their intentions to be aggressors in a confrontation with defendant.

Rule 402 of the North Carolina Rules of Evidence provides that "[e]vidence which is not relevant is not admissible." " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. R. Evid. 401. In this case, defendant relied on the theory of self-defense and presented sufficient evidence, other than the testimony in question, in support of the theory to warrant a jury instruction on self-defense. One element of self-defense is that defendant was not the aggressor in the confrontation. *State v. Maynor*, 331 N.C. 695, 417 S.E.2d 453 (1992). Thus, whether Marcel and Kelvin Johnson, rather than defendant, were the aggressors in the fatal confrontation is a fact that is of consequence to the determination of the action. Evidence that Marcel and Kelvin Johnson wanted to fight defendant and intended to "get" defendant tends to make the existence of the fact that the Johnson brothers were the aggressors in the fatal confrontation more probable than it would be without the evidence. Therefore, the testimony about the threats made by Marcel and Kelvin Johnson was relevant. Because the testimony in question was admissible under Rule 803(3) and was relevant, the trial court erred in excluding it.

The State argues that if the exclusion of the statements in question was error, defendant was not prejudiced because evidence of similar statements by Marcel Johnson was admitted.

STATE v. RANSOME

[342 N.C. 847 (1996)]

The State correctly notes that the exclusion of testimony cannot be held prejudicial when the same witness is thereafter allowed to testify to the same import, or when the evidence is thereafter admitted, or when the party offering the evidence has the full benefit of the fact sought to be established thereby by other evidence. *See State v. Edmondson*, 283 N.C. 533, 538-39, 196 S.E.2d 505, 508 (1973). However, the "similar statements" cited by the State do not meet the standard enunciated in *Edmondson*. In this argument, the State relies on defendant's testimony about statements Marcel Johnson made to him during the incident in front of the Whitley home the afternoon of the killing. Defendant testified as follows:

> When I pulled out my knife, Kelvin started backing off a little bit. That's when Marcel kept coming over. He was walking up on me even though I had a knife. I kept telling him I wasn't going to have no trouble over no girl. He was like, "No, I don't want to hear it. You a punk. I been wanting you anyway. I ain't never really liked you anyway." He was jumping at me.

> . . . .

> Well, Marcel—when he started walking towards me, I was backing up. I still had the knife, but I was still backing up. So, after about two or three minutes of that, him walking up on me, calling me a punk, this and that, he started walking back towards his car kind of fast. So, I didn't know if he was going to get a gun or what, so I hurried up and got in my car. By the time I got in my car he ran back over and kicked my door and said, "I'm going to get you."

These communicated threats by Marcel Johnson were of lesser import than, and failed to give defendant the full benefit of, the fact defendant sought to establish—that the deceased brothers had made a series of threats against defendant, both communicated and uncommunicated. The admitted, communicated threats occurred during a confrontation between defendant and the Johnson brothers. The excluded, uncommunicated threats told to Tonya Sumlin were made four weeks before the shooting; the excluded, uncommunicated threats told to Mark Johnson, two hours before the shooting. The excluded, uncommunicated threats tended to show the deceased brothers' intention to be the aggressors at a future time, while the admitted, communicated threats only showed Marcel Johnson's behavior during the course of a particular confrontation. The fact that the Johnson brothers had made a series of threats against defendant,

STATE v. RANSOME

[342 N.C. 847 (1996)]

both communicated and uncommunicated, has a stronger tendency to show that they were the aggressors in the fatal confrontation, and therefore to support defendant's plea of self-defense, than the fact that Marcél Johnson threatened defendant solely during the heat of a confrontation. We conclude that there is a reasonable possibility that if the trial court had not excluded the uncommunicated threats, a different result would have been reached at trial. Therefore, the erroneous exclusion of the uncommunicated threats prejudiced defendant. N.C.G.S. § 15A-1443(a) (1988).

For the foregoing reasons, defendant is entitled to a new trial.

NEW TRIAL.

Justice WHICHARD dissenting.

Assuming *arguendo* that the uncommunicated threats were admissible, I nonetheless disagree with the majority's holding that their exclusion prejudiced defendant to such an extent that he is entitled to a new trial.

It is the rule in this jurisdiction that not every erroneous ruling on the admissibility of evidence will result in a new trial being ordered. *State v. Galloway*, 304 N.C. 485, 496, 284 S.E.2d 509, 514 (1981). To warrant a new trial, an appellant must show not only error, but also that "there is a reasonable possibility that, had the error not been committed, a different result would have been reached at trial." *State v. Martin*, 322 N.C. 229, 238-39, 367 S.E.2d 618, 624 (1988); *accord* N.C.G.S. § 15A-1443(a) (1988). A new trial should not be granted where evidence improperly excluded would not, if included, have changed the outcome of the trial. "[W]hether the [trial court's] actions amount to reversible error is a question to be considered in light of all of the circumstances, and the burden is on the defendant to show prejudice." *State v. Heath*, 77 N.C. App. 264, 271, 335 S.E.2d 350, 355 (1985), *rev'd on other grounds*, 316 N.C. 337, 341 S.E.2d 565 (1986).

Here, the State's evidence tended to show that defendant entered the Hardee's restaurant waving a pistol at Marcel and Kelvin Johnson, who were sitting in booths. Marcel Johnson and Antonio Jones both told defendant to put the pistol away. The restaurant manager also came over and attempted to calm defendant. Despite their combined efforts, defendant continued to brandish the weapon and behave in a threatening manner. When Marcel Johnson stood up and walked toward the door, defendant shot him. After Marcel had fallen, defend-

STATE v. RANSOME

[342 N.C. 847 (1996)]

ant fired a second, fatal shot at his back. Kelvin Johnson tried to run, but defendant shot him in the chest and then fired another shot. The paramedics and police officers who went to the crime scene found no weapons on either victim. All of the State's witnesses testified that the only person they had seen with a weapon was defendant and that the victims appeared to have done nothing to provoke defendant at the time of the shootings. Other than defendant's own self-serving testimony, no evidence was presented to the contrary.

Additionally, evidence substantively similar to that excluded was introduced through defendant's own testimony. As the majority notes, defendant testified about statements Marcel Johnson made to him in front of the Whitley home the afternoon of the murders. Defendant testified that Marcel Johnson said: "You a punk. I been wanting you anyway. I ain't never really liked you anyway." Defendant also testified that when he retreated to his car, Johnson ran over, kicked the door of the car, and said, "I'm going to get you."

As the majority concedes, the exclusion of testimony cannot be held prejudicial when the same witness is thereafter allowed to testify to the same import, or the evidence is thereafter admitted, or the party offering the evidence has the full benefit of the fact sought to be established thereby by other evidence. *State v. Edmondson*, 283 N.C. 533, 538-39, 196 S.E.2d 505, 508 (1973). Defendant's own testimony about the threats Marcel communicated to him the very afternoon of the murders gave defendant the full benefit of presenting evidence to the jury supporting his claim that Marcel was the aggressor. Thus, because defendant, through his own testimony, received the full benefit of evidence that Marcel was the aggressor, the exclusion of the testimony of Tonya Sumlin and Mark Johnson concerning Marcel Johnson's uncommunicated threats was not prejudicial.

In view of the totality of the evidence presented, I cannot conclude that defendant carried his burden of proving that had the error in question not been committed, a different result would have been reached at trial. I therefore respectfully dissent.

Justices PARKER and LAKE join in this dissenting opinion.