STATE OF NORTH CAROLINA v. IVORY LAMONT MESSICK, DEFENDANT

No. COA02-938

(Filed 5 August 2003)

## 1. Homicide— first-degree murder—motion to dismiss—failure to renew motion at close of all evidence—waiver

Although defendant contends the trial court erred by denying his motion to dismiss the charge of first-degree murder made at the close of the State's evidence, defendant waived this assignment of error because defendant failed to renew his motion at the close of all the evidence.

## 2. Evidence— exclusion of victim's uncommunicated threats—substantially same evidence presented

The trial court did not err in a first-degree murder case by excluding the victim's uncommunicated threats to defendant from the jury, because: (1) the evidence of uncommunicated threats was not admissible at the time of the proffer since defendant had not testified at that time and had not offered evidence of self-defense; (2) defendant was not prohibited from and failed to recall the pertinent witness after defendant had testified and had laid a proper foundation for admissibility of the testimony; and (3) defendant testified to substantially the same evidence.

## 3. Homicide— first-degree murder—proximate cause—expanded instruction

The trial court did not err by giving an expanded instruction on proximate cause in a first-degree murder prosecution that "defendant's act need not have been the last cause or the nearest cause. It is sufficient if concurred where some other cause acting at the same time which in combination with it proximately caused the death of the victim" where the State's evidence showed that defendant shot the victim in the head and shoulder from a range of two feet; defendant shot the victim a second time after the victim fell to the ground; defendant threw the gun down and fled; a friend of defendant retrieved the gun and shot the victim again; the friend then drove the victim's body from the scene and burned it; and the cause of death was two gunshot wounds to the victim's neck and face area. The issue of the omission of an additional instruction on reasonable foreseeability was not be-

fore the appellate court where defendant failed to request such an instruction or to assign its omission as plain error.

**4. Homicide— first-degree murder—short-form indictment— constitutionality**

A short-form indictment is constitutionally sufficient to allege first-degree murder based on premeditation and deliberation.

Judge WYNN dissenting.

Appeal by defendant from judgment entered 29 October 2001 by Judge Ernest B. Fullwood in Pender County Superior Court. Heard in the Court of Appeals 15 April 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Daniel P. O'Brien, for the State.*

*Rudolph, Maher, Widenhouse & Fialko, by M. Gordon Widenhouse, Jr., for the defendant-appellant.*

TYSON, Judge.

Ivory Lamont Messick ("defendant") appeals from his jury conviction and sentence for the first-degree murder of Reginald Carr ("Carr"). We find no error.

## I. Background

Carr died from gunshot wounds to his head and neck. His body was discovered burned beyond recognition. On 17 November 2000, Carr rode with Chauncy Robinson ("Robinson") and Will Pigford ("Pigford") to the home of defendant's uncle. Carr walked with Robinson into the yard next to defendant's home, where three other men were talking near a parked car. Sometime later, defendant and another man returned from buying beer for two men, who were cutting hair inside defendant's house. Before defendant entered his home, Carr asked defendant if he had "any words" for him. Defendant replied that he did not.

A few minutes later, defendant returned outside and sat on a car while talking. Apparently, defendant turned his attention to Carr and Robinson and asked them to leave. According to the State's evidence, Carr was walking away towards his car with his back toward defendant when Robinson yelled "watch out." Carr turned in response and raised his hands. Defendant shot Carr in the face or shoulder area.

After Carr fell, defendant shot him again. Defendant dropped the gun and fled the scene.

After defendant left, Jack Brown placed Carr's body in a car, drove the car to another location and burned the vehicle with Carr's body inside. Other evidence was presented to show that Jack Brown shot Carr twice before placing Carr's body in the vehicle.

Defendant offered evidence to show that Carr walked to the car in a sideways motion with his face turned toward defendant at all times and made statements from which one could infer Carr was "going to get defendant later." Someone yelled, "watch out he's got a gun," and defendant looked and saw something shiny in Carr's hand. Defendant pulled his gun from his waistband, shot once, dropped the gun, and ran away.

Defendant appeals his conviction of first-degree murder based upon premeditation and deliberation, and his sentence to life imprisonment without possibility of parole.

## II. Issues

Defendant contends the trial court erred in (1) denying defendant's motion to dismiss for insufficient evidence, (2) excluding the victim's uncommunicated threats to defendant from the jury, (3) its instruction on proximate cause, and (4) failing to dismiss a defective indictment.

## III. Motion to Dismiss

[1] Defendant argues that the trial court erred by refusing to grant his motion to dismiss made at the close of the State's evidence based on insufficiency of the evidence. Defendant failed to renew his motion at the close of all the evidence. N.C.R. App. P. 10(c)(3) (2002) ("If a defendant makes such a motion after the State has presented all its evidence and has rested its case and that motion is denied and the defendant then introduces evidence, his motion for dismissal or judgment in case of nonsuit made at the close of State's evidence is waived. Such a waiver precludes the defendant from urging the denial of such motion as a ground for appeal.") Defendant has waived this assignment of error.

## IV. Uncommunicated Threats

[2] Defendant argues the trial court erred in excluding the victim's uncommunicated threats to defendant into evidence because it was relevant to the issue of self-defense. We disagree.

STATE v. MESSICK

[159 N.C. App. 232 (2003)]

At trial, Pigford, a witness for defendant, testified on *voir dire* that three months prior to the incident he heard Carr say that he was going to rob defendant and kill defendant and his family if defendant did not give Carr money. This statement was not communicated by Carr or Pigford to defendant prior to the shooting. This evidence was proffered prior to defendant's testimony. The trial court sustained the State's objection to this testimony.

"Generally speaking, uncommunicated threats are not admissible in homicide cases." *State v. Minton*, 228 N.C. 15, 17, 44 S.E.2d 346, 348 (1947). However, under Rule 803(3) of the North Carolina Rules of Evidence, statements of a victim's state of mind are admissible if the victim's state of mind is relevant to the case. Where a defendant relies on the theory of self-defense and presented sufficient evidence, the uncommunicated threat is admissible under Rule 803(3) to show the state of mind of the victim and that the victim was the aggressor. *State v. Ransome*, 342 N.C. 847, 467 S.E.2d 404 (1996).

The State concedes that the testimony was admissible hearsay, but contends that the evidence was properly excluded because defendant had not presented any evidence of self-defense at the time of Pigford's testimony.

In *State v. Jones*, 83 N.C. App. 593, 599, 351 S.E.2d 122, 126 (1986), *disc. rev. denied*, 319 N.C. 461, 356 S.E.2d 9 (1987), this Court held that in order for evidence of uncommunicated threats to be admissible, the "defendant must do more than *claim* self-defense; he must put on evidence of self-defense[.]"

Self-defense is shown when: (1) it appeared to the defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; (2) the defendant's belief was reasonable in that the circumstances as they appeared to him at that time were sufficient to create such a belief in the mind of a person of ordinary firmness; (3) the defendant did not aggressively and willingly enter into the fight without legal excuse or provocation; and, (4) the defendant did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm. *State v. McAvoy*, 331 N.C. 583, 595, 417 S.E.2d 489, 497 (1992).

Defendant had not testified at the time Pigford's testimony was proffered and had not offered evidence of self-defense. At the time of the proffer, the evidence of uncommunicated threats was not admis-

sible. The trial court properly sustained the State's objection. Defendant was not prohibited from and failed to recall Pigford after defendant had testified and had laid a proper foundation for admissibility of the testimony.

Also, defendant testified to substantially the same evidence. The jury heard from defendant: (1) Carr had planned to rob him; (2) Carr had a reputation for violence; (3) Carr was a drug dealer; and (4) prior confrontations had occurred between defendant and Carr. N.C. Gen. Stat. § 15A-1443(a) (2001) provides that:

> A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant. Prejudice also exists in any instance in which it is deemed to exist as a matter of law or error is deemed reversible per se.

N.C. Gen. Stat. § 15A-1443(a) (2001). "[N]o prejudice arises from the erroneous exclusion of evidence when the same or substantially the same testimony is subsequently admitted into evidence." *State v. Hageman*, 307 N.C. 1, 24, 296 S.E.2d 433, 446 (1982). *See also State v. Walden*, 311 N.C. 667, 319 S.E.2d 577 (1984). The jury was aware of virtually the same evidence contained in Pigford's proffer through defendant's testimony. This assignment of error is overruled.

## V. Jury Instructions

[3] Defendant argues that the trial court misstated the law and unconstitutionally reduced the State's burden of proof by its instruction on proximate cause. The trial court instructed:

> Second, the state must prove that the defendant's act was a proximate cause of the victim's death. A proximate cause is a real cause, a cause without which the victim's death would not have occurred. The defendant's act need not have been the last cause or the nearest cause. It is sufficient if it concurred where some other cause acting at the same time which in combination with it proximately caused the death of the victim.

Defendant contends the charge was erroneous. He asserts that the instruction allowed the jury to convict him of first-degree murder

without requiring the State to prove beyond a reasonable doubt he proximately caused the death of the decedent. Defendant argues, "it is not sufficient for defendant's act to occur along with another act, for which he is not responsible and could not foresee, where the latter act causes Carr's death." Defendant requests this Court to find reversible error and award a new trial for failure of the trial court to instruct on reasonable foreseeability. Defendant argues it is not reasonably foreseeable that a third person would shoot Carr after defendant left the scene without evidence of a conspiracy or agreement. We disagree.

The trial court gave the pattern instruction found in N.C.P.I.-Criminal 206.10, with additional language found in Footnote 7. Footnote 7 to N.C.P.I.-Criminal 206.10 states in part:

> The defendant's act need not have been the last cause or the nearest cause. It is sufficient if it occurred with some other cause acting at the same time, which in combination with it, proximately caused the death of (name victim).

In *State v. Lane*, 115 N.C. App. 25, 29, 444 S.E.2d 233, 236, *disc. rev. denied*, 337 N.C. 804, 449 S.E.2d 753 (1994), this Court upheld a similar instruction and held that "[t]here can be more than one proximate cause, but criminal responsibility arises as long as the act complained of caused or directly contributed to the death." (citing *State v. Cummings*, 301 N.C. 374, 271 S.E.2d 277 (1980)).

The State's evidence showed that defendant held a gun in Carr's face and shot him in the head and shoulder area from an approximate range of two feet. Defendant shot Carr a second time after Carr fell to the ground. Defendant threw the gun down and fled, leaving Carr bleeding on the ground. Jack Brown, a friend of defendant's family, retrieved the gun and shot Carr again. Brown then drove Carr's body away from the scene of the crime and burned it. An autopsy revealed two bullet wounds to Carr's neck and face area. Based upon the condition of the body, the pathologist opined that the cause of death was the two gunshot wounds.

Under these facts, the trial court properly gave the expanded proximate cause instruction for the second element of first-degree murder. Defendant's act does not have to be the *sole* proximate cause of death. It is sufficient that the act was *a* proximate cause which in combination with another possible cause resulted in Carr's death. *See State v. Gilreath*, 118 N.C. App. 200, 454 S.E.2d 871 (1995); *see also*

*State v. Minton,* 234 N.C. 716, 68 S.E.2d 844 (1952). The trial court did not err in its instruction to the jury on proximate cause.

The dissent would hold that the trial court erred in refusing to give an instruction on foreseeability. Neither the transcript nor the record shows that defendant requested an instruction on foreseeability. Defendant objected and excepted to the use of the instruction in Footnote 7, as set out above. However, he did not request additional instructions. Nothing further was mentioned regarding foreseeability or proximate cause. After instructing the jury, the trial court asked, "Mr. Spivey, [on] behalf of the defendant, any objections, comments, questions or corrections?" Counsel for defendant responded, "[n]one from the defendant, Your Honor."

Defendant does not specifically cite this omission of an instruction on foreseeability as an assignment of error. In the absence of such a request or an assignment of plain error, the issue of an additional instruction on foreseeability is not properly before this Court to review. N.C.R. App. P. 10 (2002).

## VI. Short-form Indictment

**[4]** Defendant contends the trial court erred in denying his motion to dismiss the indictment for failure to allege every element of first-degree murder. Our Courts have repeatedly and consistently held that the short-form indictment is constitutionally sufficient to allege first-degree murder based on premeditation and deliberation. *See e.g.,* *State v. Hunt,* 357 N.C. 257, 274, 582 S.E.2d 593, 604 (2003); *State v. Walters,* 357 N.C. 68, 79, 588 S.E.2d 344, 351 (2003) ("[T]his Court has repeatedly addressed and rejected this argument. Defendant has presented no compelling reason for this Court to reconsider the issue in the present case.") (citing *State v. Braxton,* 352 N.C. 158, 173-75, 531 S.E.2d 428, 437-38 (2000), *cert. denied,* 531 U.S. 1130, 148 L. Ed. 2d 797 (2001); *State v. Wallace,* 351 N.C. 481, 504-08, 528 S.E.2d 326, 341-43, *cert. denied,* 531 U.S. 1018, 148 L. Ed. 2d 498 (2000)). We have reviewed over fifty additional decisions in which this issue has been raised and rejected by our Supreme Court and this Court in the last three years. These decisions consistently hold that the short-form murder indictment is constitutional. This assignment of error is without merit and is overruled.

## VI. Conclusion

Defendant waived his right to appeal the denial of his motion to dismiss for insufficient evidence. The trial court did not err in exclud-

ing testimony of uncommunicated threats, instructing the jury, or denying defendant's motion to dismiss for insufficiency of the indictment.

No error.

Judge STEELMAN concurs.

Judge WYNN dissents.

WYNN, Judge, dissenting.

Following his conviction on the charge of the first-degree murder of Reginald Carr, defendant, Ivory Lamont Messick, presents the following pertinent issues on appeal:

**(I) Whether the trial court erred in overruling defendant's objection to an instruction on proximate cause that unconstitutionally reduced the state's burden of proof by allowing the jury to convict without finding defendant himself caused the victim's death?**

**(II) Whether the trial court erred in excluding Reginald Carr's threats against defendant, even though communicated to another person, as this proffered evidence was relevant to self-defense by showing Carr was the aggressor in the fatal confrontation?**

Contrary to the majority's holding, the record on appeal shows that the trial court insufficiently instructed the jury, and improperly excluded evidence of the uncommunicated threats; accordingly, defendant is entitled to a new trial.

Although the majority opinion offers an accurate factual summary of this case, there are additional facts worth pointing out to more fully understand the issues on appeal. In this case, the evidence at trial tended to show that Reginald Carr died on 17 November 2000 as the result of two gunshot wounds to the head and neck; afterwards, his body was burned beyond recognition. On the day of his killing, Reginald Carr rode with Chauncy Robinson and Will Pigford to defendant's uncle's home; thereafter, he walked with Chauncy Robinson into defendant's next door yard where three other men were talking near a parked car. Sometime later, defendant and another man returned from buying beer for two men cutting hair

inside defendant's house. Before defendant entered his home, Reginald Carr asked defendant if he had "any words" for him; defendant replied he did not.

A few minutes later, defendant came back outside and sat on a car talking. Apparently, he turned his attention to Reginald Carr and Chauncy Robinson and asked them to leave. According to the State's evidence, Reginald Carr walked towards his car with his back to defendant when Chauncy Robinson yelled watch out; in response, Reginald Carr turned around and raised his hands. Thereafter, defendant shot Reginald Carr in the face or shoulder area. Reginald Carr fell and defendant shot him again.

However, according to defendant's evidence, Reginald Carr walked to the car in a sideways motion with his face turned to defendant at all times; made statements from which one could infer Reginald Carr was "going to get defendant later"; then, someone yelled "watch out he's got a gun" and defendant looked and saw something shiny in Reginald Carr's hand. Defendant then pulled his gun from his waistband, shot once, dropped the gun and ran away.

After defendant left, the evidence tended to show that, a third person shot Reginald Carr twice. After shooting Reginald Carr, it is uncontroverted that this third person placed Reginald Carr's body in a car, drove the car to another location and burned the car and the body.

From his conviction of first-degree murder based upon premeditation and deliberation, and sentence to life without parole, defendant appeals.

---

## (I)

**Whether the trial court erred in overruling defendant's objection to an instruction on proximate cause that unconstitutionally reduced the state's burden of proof by allowing the jury to convict without finding defendant himself caused the victim's death?**

From the outset, it should be noted that notwithstanding defendant's request for a correct instruction on proximate case, the majority dismisses the notion that this Court should review the trial court's failure to instruct on foreseeability because, "neither the transcript nor the record shows that defendant requested an instruction on fore-

seeability." However, the majority fails to cite a single case to support that proposition because no such requirement exists under our law when a defendant properly challenges a proximate cause instruction. Indeed, "every substantial feature of the case arising on the evidence must be presented to the jury even without a special request for instructions on the issue." *State v. Watson*, 80 N.C. App. 103, 106, 341 S.E.2d 366, 369 (1986). "Implicit in this requirement is that the trial court must *correctly* declare and explain the law as it relates to the evidence. The failure of the court . . . to correctly instruct the jury on substantial features of the case arising on the evidence [constitutes] error for which [the] defendant is entitled to a new trial." *Id.*; *see also State v. Ardrey*, 232 N.C. 721, 723, 62 S.E.2d 53, 55 (1950) (stating "a judge in his charge to the jury should present every substantial and essential feature of the case embraced within the issue and arising on the evidence, and this without any special prayer for instructions to that effect. When the evidence is susceptible of several interpretations a failure to give instructions which declare and explain the law in its application to the several phases of the evidence is held for reversible error"); *State v. Mizelle*, 13 N.C. App. 206, 185 S.E.2d 317 (1971) (stating "foreseeability is a requisite of proximate cause"). Thus, I reject the majority's conclusion that because the trial court instructed on proximate cause in accordance with the pattern jury instructions, the trial court's instruction was proper.

Indeed, relying upon pattern jury instructions "does not obviate the trial judge's duty to instruct the law correctly." *State v. Jordan*, 140 N.C. App. 594, 596, 537 S.E.2d 843, 845 (2000) (stating the fact that the trial court's language may come directly from the pattern jury instructions does not obviate the trial judge's duty to instruct the law correctly and referencing *Johnson v. Friends of Weymouth, Inc.*, 120 N.C. App. 255, 258-59, 461 S.E.2d 801, 804 (1995) which ordered a new trial when the pattern jury instructions did not accurately reflect the law); *see also State v. Mizelle*, 13 N.C. App. 206, 185 S.E.2d 317 (1971) (finding a proximate cause instruction based upon the pattern jury instructions insufficient because it did not include all of the necessary elements of proximate cause). Moreover, the guide to the pattern jury instructions states:

These instructions are intended to state the law applicable in typical fact situations. In some instances the facts may call into play alternative rules of law or special rules, exceptions, or defenses and make the pattern instruction given in this book partially or totally inapplicable. The forms contain additional or substitute

STATE v. MESSICK

[159 N.C. App. 232 (2003)]

language at certain places in an attempt to suggest adjustment for frequently encountered factual variations, but to suggest all changes would be impossible.

N.C.P.I.-Criminal, xix. Accordingly, the trial court was required to give a proximate cause instruction that correctly stated the law based upon the facts of this particular case. *See State v. Pope*, 24 N.C. App. 217, 210 S.E.2d 267 (1974) (explaining that our Supreme Court held in *State v. Dewitt* that the trial court must instruct fully on proximate cause as it relates to the facts of the particular case); *State v. Rice*, 151 N.C. App. 750, 567 S.E.2d 465 (2002) (stating "in a criminal case, the trial court has the duty to instruct the jury on the law arising from all the evidence presented.); *see also State v. Durham*, 149 N.C. App. 233, 562 S.E.2d 304 (2002) (stating "the trial court has the duty to instruct the jury on all substantial features of a case raised by the evidence").

Furthermore, the record shows defendant complied with N.C. R. App. P. 10(b)(1), (2) which states:

(b)  Preserving Questions for Appellate Review

(1)  *General.* In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion. Any such question which was properly preserved for review by action of counsel taken during the course of proceedings in the trial tribunal by objection noted or which by rule or law was deemed preserved or taken without any such action, may be made the basis of an assignment of error in the record on appeal.

(2)  *Jury Instructions; Findings and Conclusions of the Judge.* A party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection; provided, that opportunity was given to the party to make the objection out of the hearing of the jury, and, on request of any party, out of the presence of the jury.

**STATE v. MESSICK**

[159 N.C. App. 232 (2003)]

The charge conference transcript indicates:

MR. DAVID [prosecutor]: Your honor, we have 206.10 in front of us.

THE COURT: Well, you know that it's—

MR. DAVID: It could be different.

THE COURT: I'm sure it's the same but, in order to give it to the jury, I have to modify it to the extent that it's tailored to this case, and that's what I was suggesting.

MR. DAVID: Yes, we would like that, specifically to have footnote seven in there which says, where there's a serious issue as to proximate cause, further instruction may be helpful. Example, the defendant's action need not have been the last cause or the nearest cause. It is sufficient if it concurred with some other cause acting at the time which, in combination with it, proximately caused the death of the victim, Reggie Carr. We believe that there's an issue as to the cause of death on whether it was Barry Brown's acts and either burning the body or shooting the body after the defendant left, and it's necessary that this jury understand that that defendant is just as guilty of first degree murder if the wounds that he inflicted acted at the same time in combination with any wounds that Barry Brown inflicted to proximately cause the death of Reggie Carr, and we would ask for that instruction in there.

. . .

MR. SPIVEY [defense counsel]: Did Your Honor rule on that?

THE COURT: Do you wish to speak to it?

. . .

MR. SPIVEY: Your Honor, this situation covered by that subparagraph is not—doesn't cover this. That covers the situation where people are acting in concert, where there's evidence of that. There's absolutely no evidence in this case that after Lamont ran, Lamont Messick ran from that area he had anything to do with what Jack Brown did to that body. It's the defendant's position that that instruction would not be proper under these circumstances, Your Honor.

STATE v. MESSICK

[159 N.C. App. 232 (2003)]

THE COURT: I think it's proper. I'm going to overrule the defendant's objection, but let the record reflect that the defendant objects and excepts to the court's ruling. I'm going to add it as a part of it's instruction.

Accordingly, defendant timely objected to the proximate cause charge on foreseeability, stated distinctly that to which he objected, specifically stated the grounds of his objection, and obtained a ruling on his objection. Thus, the requirements of N.C. R. App. P. 10 were met in this case.

After properly preserving his objection, defendant raised this error in assignment of error 3 by referencing the relevant transcript pages and stating "the trial court erred in overruling defendant's objection to jury instructions on proximate cause as this instruction was not supported by the evidence or the applicable legal authorities and tended to confuse the jury in violation of defendant's constitutional and statutory rights." Finally, as previously explained, neither our appellate rules nor our case law require the defendant to proffer an instruction on foreseeability. Rather, the trial court is required to instruct correctly on all substantial features of the case even without a request for a special instruction. Accordingly, defendant properly preserved this issue for appellate review, this issue is properly before this Court, and this issue is not subject to plain error analysis.

Moreover, the majority only includes a portion of N.C.P.I.-Criminal 206.10, footnote 7 in its opinion. The full text of footnote 7 states:

where there is a serious issue as to proximate cause, further instructions may be helpful, e.g., 'The defendant's act need not have been the last cause or the nearest cause. It is sufficient if it occurred with some other cause acting at the same time, which in combination with it, proximately caused the death of (name victim)

Accordingly in this case where all parties and the trial court recognized that based upon the facts, foreseeability was seriously in issue, the trial court was required to give an accurate proximate cause instruction even without a request for a special instruction.

This case presents a factual pattern that requires a greater examination of the proper instructions on proximate cause. The record on appeal shows that after the initial shootings by defendant, Jack Brown shot Reginald Carr, removed the body from the scene and

burned it. No evidence was presented indicating defendant and Jack Brown acted in concert for a common criminal purpose.

The majority cites two factually distinguishable cases, *State v. Lane*, 115 N.C. App. 25, 444 S.E.2d 233 (1994), and its reference to *State v. Cummings*, 301 N.C. 374, 271 S.E.2d 277 (1980), as support for the instruction given in this case. In *State v. Lane*, utilizing the rule "neither negligent treatment nor neglect of an injury will excuse a wrongdoer *unless the treatment or neglect was the sole cause of death*," this Court rejected the defendant's argument that the primary responsibility for the victim's death lay in the superseding act of the police taking the victim into custody without seeking timely medical attention. This Court found that "no evidence exists here to show that any action taken by the police was the sole cause of decedent's death. There can be more than one proximate cause, but criminal responsibility arises as long as the act complained of caused or directly contributed to the death." *Lane*, 115 N.C. App. at 29, 444 S.E.2d at 236. Essentially, the intervening negligence of a third party does not break the chain of causation. Similarly in *Cummings*, our Supreme Court found the simultaneous assault of the victim was a proximate cause of the victim's death despite the doctor's opinion that the victim's intoxication caused the victim's unconsciousness which led to an impairment of his gag reflexes which ultimately led to the immediate cause of death—the obstruction of his airway by vomit which he sucked into the airway system of his lungs. *State v. Cummings*, 301 N.C. 374, 271 S.E.2d 277 (1980). In *Cummings*, the Court based its decision upon the rule that "the act of the accused need not be the immediate cause of death. He is legally accountable if the direct cause is the natural result of the criminal act." Thus, actions causing an unforeseeable result may be found to be a proximate cause. Neither of these rules are applicable to the case *sub judice* because the unforeseeable independent criminal actions of Jack Brown was sufficient evidence to allow a jury to conclude that his actions were intervening, superseding, and sole cause of Reginald Carr's death.

Indeed, the facts indicate that as many as four to six shots may have been fired. Chauncy Robinson, the State's only eyewitness, testified defendant shot Reginald Carr twice near Reginald Carr's shoulder and neck area and that he heard two more shots as he ran away. Will Pigford, a defense eyewitness, testified that he saw defendant shoot Reginald Carr once and run away from the scene. Carlos Williams testified that after defendant shot Reginald Carr, he dropped the gun and another man, Jack Brown, picked up the gun and shot

Reginald Carr twice. Jack Brown then placed Reginald Carr's body in the back seat of a car and drove away. Other evidence indicates Reginald Carr's body was subsequently set on fire.

The medical examiner testified that Reginald Carr's body was severely charred such that his race could not be identified; his lower arms had been burned away from his body; several of his organs had been "cooked" by the fire; and, two gunshot entrance wounds—on the right side of his neck and face—had been found on the body. As for the first entrance wound, there was no evidence that the bullet hit an artery, jugular vein, or an airway, and the bullet was recovered from the neck's muscle tissue. This bullet traveled in an upward direction. The second entrance wound indicated the bullet, recovered from the left side of the neck, traveled in a downward motion from its entrance on the right side of Reginald Carr's face. The medical examiner testified that she was presented with only Reginald Carr's upper torso, and that an x-ray of that area did not indicate any other gunshot wounds. She also testified that the first wound alone would not have been sufficient to cause death, but in her opinion, combined with the gunshot wound to the face to cause Reginald Carr's death.

From the testimony presented, the jury should have been allowed to determine whether the criminal actions of Jack Brown were the sole cause of Reginald Carr's death.

This case is governed by our Supreme Court's decision in *State v. Gibson*, 333 N.C. 29, 36-37, 424 S.E.2d 95, 98-99 (1992), *overruled on other grounds by State v. Lynch*, 334 N.C. 402, 432 S.E.2d 349 (1993) and *State v. Bell*, 338 N.C. 363, 450 S.E.2d 710 (1994). In analyzing a similar issue, our Supreme Court reiterated an established principle of our law that:

> If one man inflicts a mortal wound, of which the victim is languishing, and then a second kills the deceased by an *independent act*, we cannot imagine how the first can be said to have killed him, without involving the absurdity of saying that the deceased was killed twice. In such a case, the two persons could not be indicted as joint murderers, because there was *no understanding, or connection between them.*

*Gibson*, 333 N.C. at 37, 424 S.E.2d at 99 (1992). In *Gibson*, the defendant fired two shots at the victim, hitting him in the chest and the little finger. "Immediately after these shots by defendant, [another person] shot [the victim] in the head from point blank range." *Id.* In that

STATE v. MESSICK

[159 N.C. App. 232 (2003)]

case, our Supreme Court agreed with the defendant's contention that "the rule in this state . . . is that the conduct of the independent intervenor . . . terminated the criminal liability of the first assailant. . . . Thus, . . . the trial court erroneously permitted the jury to find proximate causation even if it found that defendant acted alone in shooting [the victim] and that [the intervenor's] conduct was an independent, intervening cause of death." *Id.*

Dissimilar to our case, in *Gibson*, the defendant was convicted of conspiracy to commit first-degree murder and robbery with a dangerous weapon. Accordingly, as the Court noted, "it is logically implausible that the jury could have found that defendant acted independently for the purpose of the first-degree murder conviction while, on the same facts, it found an agreement between defendant and a co-conspirator in convicting defendant on the conspiracy to murder charge." *Id.* In the case *sub judice*, there is no evidence of a conspiracy or agreement between Jack Brown and defendant.[1] Accordingly, if the jury determined Jack Brown's actions were unforeseeable and that Jack Brown was the sole cause of Reginald Carr's death, then defendant's actions were not the proximate cause of his death. However, under the instructions rendered in this case, the jury was not allowed to consider the actions of defendant and Jack Brown separately.

In sum, *State v. Gibson* controls this case. Moreover, "in the absence of conspiracy, one cannot, except in certain applications of the felony-murder doctrine, be lawfully convicted of homicide if the

---

1. The majority cites *State v. Minton*, 234 N.C. 716, 68 S.E.2d 844 (1952) and *State v. Gilreath*, 118 N.C. App. 200, 454 S.E.2d 871 (1995) as support for the charge given on the facts of this case. Neither *Minton* nor *Gilreath* analyzes proximate causation in the context of a superseding criminal act of an independent third party. In *Minton*, after the defendant wounded the victim, he left the victim outside on a frigid night. On appeal, our Supreme Court rejected the defendant's contention that cause of death was obscure because "an accused who wounds another with intent to kill him and leaves him lying out of doors in a helpless condition on a frigid night is guilty of homicide if his disabled victim dies as the result of exposure to the cold. This is true because the act of the accused need not be the immediate cause of the death. He is legally accountable if the direct cause is the natural result of his criminal act." *Minton*, 234 N.C. at 722, 68 S.E.2d at 848. Similarly, this Court in *Gilreath* rejected the defendant's contention that the cause of death was the victim's decision against medical advice to undergo colostomy reversal surgery because (1) he is legally accountable if the direct cause is the natural result of the criminal act, and (2) the act complained of does not have to be the sole proximate cause of death, nor the last act in sequence of time . . . It is enough if defendant['s] unlawful acts join and concur with other causes in producing the result. *Gilreath*, 118 N.C. App. at 206-08, 454 S.E.2d at 874-75. In the case *sub judice*, the intervening and superseding criminal act of a third person is not the natural and probable consequence of defendant's criminal action.

deceased dies from another and distinct wound inflicted by a different person". 40 Am. Jur. 2d *Homicide* § 16 (2002). Accordingly, on the facts of this case, defendant is entitled to a new trial with a proximate cause instruction that correctly defines the law.

## (II)

**Whether the trial Court erred in excluding Reginald Carr's threats against defendant, even though communicated to another person, as this proffered evidence was relevant to self-defense by showing Carr was the aggressor in the fatal confrontation?**

Defendant also contends it was error for the trial court to exclude testimony from Will Pigford that three months prior to the incident he heard Reginald Carr, say he was "going to rob [defendant], tie his mother and his daughter up until he give up the money and kill them if he have to."

Our case law establishes that upon a proper showing that the accused in a homicide case may have acted in self-defense, a jury is entitled to hear and evaluate evidence of uncommunicated threats, communicated threats, and evidence of the general character of the deceased as a violent and dangerous man. *See State v. Allmond*, 27 N.C. App. 29, 31, 217 S.E.2d 734, 736 (1975). "However, as a condition precedent to the admissibility of such evidence, the defendant must first present viable evidence of the necessity of self-defense. There must be evidence . . . that the party assaulted believed at the time that it was necessary to kill his adversary to prevent death or great bodily harm, before he may seek refuge in the principle of self-defense, and have the jury pass upon the reasonableness of such belief." *Id.*

In this case, the State concedes that the "testimony in question *was* admissible hearsay, . . . since it fell under the state of mind exception to the hearsay rule as a statement of the declarant's intent." Nonetheless, the State contends that at the time this testimony was offered by defendant, it was not relevant because "the defendant had not at that point in the trial presented sufficient evidence of self-defense." Thus, the State contends, that the trial court did not err in excluding the testimony because "after defendant *had* presented his evidence of self-defense, defendant failed to renew his proffer of testimony." I disagree.

The majority, quoting *State v. Jones*, states "the defendant must do more than *claim* self-defense; he must put on evidence of self-

defense[.]" However, as *State v. Jones* further explains, upon a proper showing that the accused in a homicide case may have acted in self-defense, a jury is entitled to hear and evaluate evidence of uncommunicated threats, communicated threats, and evidence of the general character of the deceased as a violent and dangerous man. *State v. Jones*, 83 N.C. App. 593, 351 S.E.2d 122 (1986) (quoting *State v. Allmond*, 27 N.C. App. 29, 31, 217 S.E.2d 734, 736 (1975).

The record in this case shows that the defendant had presented viable evidence of self-defense prior to eliciting the proffered testimony from Will Pigford. Although the majority correctly points out the content of the uncommunicated threat was elicited during a *voir dire* examination of Will Pigford during redirect examination, the majority neither considers nor acknowledges any of the testimony elicited from Will Pigford prior to the State's objection to defendant's question regarding the uncommunicated threat. Before asking Will Pigford about the uncommunicated threat, the following information relevant to self-defense had been elicited: (1) upon defendant returning home from the store, the victim approached defendant and asked him whether he had "any words for him" and defendant replied "I have no words for you, I ain't got nothing to say to you," (2) the victim appeared bowed all up, chest sticking out, like he was bad, (3) one of the victim's hands was not visible prior to the incident, (4) Pigford had seen the victim with a gun just prior to going to defendant's home, (5) defendant asked the victim to leave four times, (6) after the fourth time, the victim began to walk towards his car sideways without taking his eyes off the defendant, (7) while the victim was walking he was saying "later, you're going to feel the vibe," (8) someone near the defendant said "Look out, he's got a gun," and (9) prior to the incident and prior to defendant returning home, defendant's uncle, who lived next door to defendant, told the victim he needed to talk to defendant to get the problem he had with defendant straight.

The *Jones* requirement that as a condition precedent "there must be evidence . . . that the party assaulted believed at the time that it was necessary to kill his adversary to prevent death or great bodily harm" before the uncommunicated threat evidence may be presented was met in this case. Will Pigford had testified the victim had a gun before going to defendant's home, that the victim had made a threat against defendant, and that someone had yelled a warning, "Look out, he's got a gun" just before the defendant fired his weapon. Although whether the warning was meant for the victim or the defendant is dis-

puted by the parties, it is still a part of defendant's factual basis for his self-defense claim. While this evidence may not have been sufficient at this point in the trial to warrant a self-defense instruction, *Jones* requires *viable evidence* only. Thus it was error for the trial court to exclude Will Pigford's testimony regarding the uncommunicated threat.

Significantly, the precondition of showing evidence of self-defense before eliciting evidence of uncommunicated threats is compellingly analogous to the precondition that the State must make a prima facie showing of the existence of a conspiracy before eliciting a co-conspirators' statement. *See State v. Lipford*, 81 N.C. App. 464, 467, 344 S.E.2d 307, 309 (1986) (stating "once a conspiracy has been shown to exist the acts and declarations of each conspirator, done or uttered in furtherance of a common illegal design are admissible in evidence against all"). It is well recognized that as to the admission of a co-conspirator's statement, our courts "often permit the State to offer the acts or declarations of a conspirator before the prima facie case of conspiracy is sufficiently established." *State v. Bell*, 311 N.C. 131, 142, 316 S.E.2d 611, 617 (1984). "Of course, the prosecution must properly prove the existence of the prima facie case of conspiracy before the close of the State's evidence in order to have the benefit of these declarations and acts. If inadmissible statements are admitted and it develops that a case of conspiracy has not been shown, then upon proper motion the trial judge may strike the evidence of declarations or acts of the co-conspirators or grant a defendant's motion for judgment as of nonsuit if there is insufficient evidence to take the case to the jury without the aid of such declarations or acts." *State v. Polk*, 309 N.C. 559, 566, 308 S.E.2d 296, 299-300 (1983). Since our case law allows the State to avoid the precondition that it must make a prima facie showing of the existence of a conspiracy before eliciting a co-conspirators' statement, I can discern no good reason why defendants should not in fairness be afforded the similar equitable courtesy of relief from the strict precondition of showing evidence of self-defense before eliciting evidence of uncommunicated threats. In common terms that simply means, "what's good for the goose is good for the gander."

Thus, as in the relaxation of the State's precondition to show a conspiracy before eliciting a co-conspirator's statement, it follows that a victim's uncommunicated threat should be admitted conditioned upon competent evidence of self-defense being presented by the defense. If competent evidence is not subsequently presented, the

uncommunicated threat would not be subject to the jury's considera-
tion. The prosecution could move to strike such evidence and, fur-
thermore, if insufficient evidence of self-defense is presented, the
jury would not receive a self-defense instruction and would not be
allowed to consider such evidence in its deliberations.

Moreover, this procedure is expressly sanctioned by N.C. Gen.
Stat. § 8C-1, Rule 104 which provides:

> (a) *Questions of admissibility generally.*—Preliminary ques-
> tions concerning . . . the admissibility of evidence shall be
> determined by the court, subject to the provisions of subdivi-
> sion (b). . . .

> (b) *Relevancy conditioned on fact.*—When the relevancy of
> evidence depends upon the fulfillment of a condition of fact,
> the court shall admit it upon, or subject to, the introduction
> of evidence sufficient to support a finding of the fulfillment of
> the condition.

Accordingly, the trial court erroneously failed to admit evidence of
Reginald Carr's uncommunicated threats against defendant.

Even though it was error for the trial court to exclude the vic-
tim's uncommunicated threat, the majority holds any error was non-
prejudicial because the defendant presented similar evidence
through other means. *See State v. Ransome*, 342 N.C. 847, 853, 467
S.E.2d 404, 408 (1996) (holding that "the exclusion of testimony can-
not be held prejudicial when the same witness is thereafter allowed
to testify to the same import, or when the evidence is thereafter
admitted or when the party offering the evidence has the full benefit
of the fact sought to be established thereby by other evidence."). The
majority contends the defendant presented substantially the same
evidence through other means, such as: (1) defendant presented evi-
dence that Carr planned to rob him, (2) Carr had a reputation for vio-
lence, (3) Carr was a drug dealer, and (4) defendant and Carr had
prior confrontations. I disagree.

These facts do not have the same strength and import as a spe-
cific threat against the defendant and his family. *See id.* The fact that
the victim made an uncommunicated threat against defendant has a
stronger tendency to show that the victim may have been an aggres-
sor in the incident with the defendant than the fact that the victim
had robbed and threatened others and had a reputation for violence.
Moreover, the victim's uncommunicated threat that he intended to

rob defendant and would kill his family if necessary tends to corroborate and support defendant's testimony and contention that he acted in self-defense. *See State v. Baldwin*, 155 N.C. 494, 496, 71 S.E. 212, 213 (1911) (stating evidence of uncommunicated threats should have been received because it tended to throw light upon the occurrence). Accordingly, the trial court erroneously failed to admit evidence of Reginald Carr's uncommunicated threats against defendant.

In sum, defendant is entitled to a new trial wherein he is allowed to elicit testimony showing that the victim made threats towards him, and with a proper instruction on proximate cause.